**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Belinda Kay Moore, | No. CV-16-03445-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Belinda Kay Moore applied for Social Security Disability Insurance benefits in June 2012 and Supplemental Security Income in April 2013, alleging disability beginning December 14, 2011. After state agency denials, Moore appeared for a hearing before an administrative law judge ("ALJ"). A vocational expert ("VE") also was present and testified. Following the hearing, the ALJ issued a written decision finding that Moore is not disabled within the meaning of the Social Security Act ("SSA"). The ALJ's decision became the agency's final decision after the Social Security Administration Appeals Council denied Moore's request for review. Moore now seeks judicial review of that decision. For the following reasons, the decision of the Commissioner of Social Security Administration is reversed and this matter remanded for further proceedings.

**I. The ALJ's Five-Step Sequential Evaluation**

To determine whether a claimant is disabled for purposes of the SSA, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of

proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ determined that Moore meets the insured status requirements of the SSA through December 31, 2016, and has not engaged in substantial gainful activity since her alleged disability onset date. (AR 25.) The ALJ found at step two that Moore's degenerative disc disease of the lumbar and cervical spine status post cervical spine stimulator trial, fibromyalgia, obesity, and hypertension are severe impairments, but concluded at step three that they do not meet or medically equal the severity of a listed impairment. (*Id.* at 25-29.) At step four, the ALJ found that Moore has the RFC to perform:

> light work . . . with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. [Moore] can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl, but never climb ladders, ropes or scaffolds. She can frequently handle and/or perform gross manipulation bilaterally with the upper extremities.

(*Id.* at 29.) Based on this RFC, the ALJ found that Moore is capable of performing past

relevant work as a shipping checker, data entry clerk, and billing entry clerk, performed at the sedentary and light exertional levels. (*Id.* at 33.) Accordingly, the ALJ found that Moore is not disabled within the meaning of the SSA. (*Id.* at 34.)

## II. Standard of Appellate Review

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations and citation omitted). Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

## III. Analysis

Moore argues that the ALJ erred by discounting her testimony concerning the severity and effects of her symptoms, and by assigning little weight to the opinions of her treating physicians, Drs. Kent D. Vosler and Ravi Bhalla. (Doc. 11.)

### A. Symptom Testimony

Moore alleges disability due to degenerative disc disease, osteoarthritis, fibromyalgia, right carpal tunnel syndrome, depression, and anxiety. (AR 51.) Moore testified that her most serious health problems are caused by her back pain, which limits her ability to walk, stand, sit, and lift. She also testified that she experiences pain in her hips and legs, her arthritis causes her hands to swell, and she often is drowsy due to her medications. (*Id.* at 57-67.) In a function report from August 2012, Moore complained

of lower back, hip, and thigh pain that made it difficult to sit, stand, or walk for long periods of time, difficulty caring for personal hygiene, declining vision, drowsiness from medications, and difficulty remembering and concentrating. (*Id.* at 264-71.)

In evaluating a claimant's symptom testimony, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Here, the ALJ found that Moore's medically determinable impairments reasonably could be expected to cause her alleged symptoms, but concluded that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (AR 31.) The ALJ offered three reasons for this conclusion.

First, the ALJ discounted Moore's testimony because he found it was not supported by objective findings. (*Id.* at 30-31.) Although subjective pain testimony cannot be rejected solely because it is not supported by objective medical evidence, consistency with the objective medical evidence still is a relevant factor in determining the severity of the claimant's pain. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Relatedly, an ALJ may find a claimant's allegations of disabling symptoms less reliable if the record shows that those symptoms improved with conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Substantial evidence supports the ALJ's finding. For example, the ALJ noted that an updated MRI of Moore's spine showed improvement from mild to moderate degenerative disc disease to only mild degenerative disc disease. (AR 30.) Objective medical findings also confirmed that Moore reported an 85 percent pain relief with cervical facet procedures and over 60 percent relief from a spinal cord stimulator. (*Id.* at 1044.)

Second, the ALJ found that Moore's testimony regarding her medications and daily activities was inconsistent with previous statements in the record. An ALJ may

consider such inconsistencies when evaluating a claimant's testimony. Ordinarily, this can be done in two ways—the claimant's activities either meet the threshold for transferable work skills or contradict her other testimony. *See Orn,* 495 F.3d at 639. Here, the ALJ noted inconsistent statements within the record concerning Moore's symptoms and functioning. For example, as part of her disability application, Moore reported significant help with activities of daily living, including household tasks, driving, and shopping. (AR 267.) She also stated that showering was so difficult that she would bathe as seldom as possible. (*Id.* at 264.) These statements conflicted with Moore's statements to Dr. Peetom that she showered every day, completed household tasks, shopped alone in grocery stores, and drove as necessary. (*Id.* at 492.) Similarly, Moore stated on her disability application that her medications caused significant side effects, but reported to her providers that her medications were working well without any side effects. (*Id.* at 271, 858, 920.)

Moore acknowledges these inconsistencies, but argues that her statements only appear inconsistent if interpreted literally. (Doc. 11 at 21.) The ALJ's interpretation of Moore's testimony, however, is reasonable and supported by substantial evidence. It is not this Court's role to second-guess it.

Finally, the ALJ considered the fact that Moore received unemployment insurance benefits while she sought disability benefits. (AR 30.) In 2011, Moore was discharged from her job as a billing clerk because she was unable to meet the required quota. (*Id.* at 54.) She then filed for unemployment, certifying each week that she was ready and able to work. (*Id.* at 55.) The ALJ found that this was "grossly inconsistent with the allegations made in connection with this application and appeal . . . and suggests a financial incentive for obtaining disability benefits, rather than one based on her impairments." (*Id.* at 30-31.) Although applying for unemployment benefits might, alone, be an insufficient basis to discount a claimant's testimony, the ALJ reasonably concluded that this inconsistency, combined with other conflicting testimony in the record weakened the reliability of Moore's statements. The Court finds no error.

### B. Medical Opinion Evidence

Dr. Vosler, Moore's treating pain management doctor, submitted several opinions regarding Moore's functional capabilities. (*Id.* at 664-66, 668-70, 881-86.) Dr. Vosler opined that Moore could frequently lift less than 10 pounds, occasionally lift 10 pounds, and could stand, walk or sit for a total of 10 to 15 minutes a day. (*Id.* at 664.) He reported that Moore would need to alternate between sitting and standing every 15 to 20 minutes and that she could never climb, balance, stoop, kneel, crouch, or crawl. (*Id.* at 665.) Dr. Vosler indicated that Moore has moderately severe pain and fatigue that would frequently interfere with her attention and concentration. (*Id.* at 669-70.) He opined that this pain and fatigue would cause Moore to take unscheduled breaks every 15 to 20 minutes, making her an unreliable employee. (*Id.* at 665, 881.) Likewise, Dr. Bhalla, Moore's treating rheumatologist, opined that Moore has moderate to severe pain and fatigue precipitated by changing weather, humidity, and stress. (*Id.* at 1152-53.) His opinion noted that Moore's constant pain would interfere with her attention and concentration, and that she would be unable to sustain work on a regular and continuing basis. (*Id.*) The ALJ assigned little weight to both of these opinions. (*Id.* at 31.)

A treating physician's opinion generally is entitled to deference. *See Lester v Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight typically should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Thus, where a treating physician's opinion is not contradicted by another physician it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it still may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal

quotation and citation omitted).

Although Moore argues for application of the clear and convincing reasons standard while the Commissioner argues for application of the specific and legitimate reasons standard, both parties contend that the result is the same under either test. (Doc. 11 at 12; Doc. 12 at 5; Doc. 15 at 3-4.) The parties' arguments demonstrate a curious aspect of the standards in the Ninth Circuit to weigh competing physician opinions in Social Security disability appeals.

An ALJ's rationale for discounting a treating physician's opinion is comprised of two parts: (1) the stated reasons for discounting a treating physician's opinion and (2) the evidence supporting those reasons. Error can occur in both. For example, suppose an ALJ rejects a treating physician's opinion because the physician has a hyphenated last name, and the ALJ irrationally believes individuals with hyphenated last names are not credible. The record might contain substantial or even undisputed evidence that the treating physician's last name is hyphenated, but a reviewing court nonetheless would find error because the ALJ's stated reason is not valid. Similarly, suppose an ALJ discounts a treating physician's opinion because he determines that the opinion is inconsistent with the physician's own treatment notes, but a review of the record reveals no such inconsistencies. Though the ALJ's articulated reason is a legitimate one, a reviewing court would find error because the reason lacks substantial supporting evidence.

Outside the Social Security disability context, "clear and convincing" typically is used to qualify the quantum of evidence needed to support a claim. Application of the clear and convincing evidence standard can have a meaningful impact because more or better evidence is needed to satisfy this standard than to prove a claim by a mere preponderance of the evidence. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) ("Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce in the ultimate factfinder an abiding conviction that the truth of its factual

contentions are [sic] highly probable." (internal quotation and citation omitted)).

In the Social Security disability context, however, phrases like "clear and convincing" and "specific and legitimate" do not qualify the quantum of evidence needed to support an ALJ's decision. To the contrary, an ALJ's decision in all circumstances must be supported by the same quantum of evidence: substantial evidence. *Compare Lester*, 81 F.3d at 830 ("Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' *supported by substantial evidence in the record* for doing so." (emphasis added)), *with Snoeck v. Colvin*, 584 Fed. App'x 755, 755-56 (9th Cir. 2014) ("To reject the uncontroverted opinion of a treating physician, . . . the ALJ must provide clear and convincing reasons *supported by substantial evidence in the record*." (emphasis added)). Instead, these phrases qualify the nature of the reasons an ALJ must articulate.

Yet this Court has not been presented with a case in which application of the clear and convincing reasons standard instead of the specific and legitimate reasons standard has been dispositive. That is, the Court has yet to encounter a case in which an ALJ's stated reasons for rejecting a treating physician's opinion, though supported by substantial evidence, were specific but not clear, or were legitimate but not convincing. Rather, like this case, parties typically argue that the ALJ's rationale is or is not sufficient under both standards, either because the stated reasons simply are not valid or because the reasons lack substantial evidentiary support. The Court has difficulty hypothesizing examples of reasons that would be specific but not clear, or legitimate but not convincing. Nor is it apparent why a reviewing court in any circumstance should be satisfied with reasons that are generalized, vague, or unconvincing. Notably, some Ninth Circuit decisions blend the verbiage, suggesting that the line between specific and clear or between legitimate and convincing is more abstract than practical. *See, e.g., Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) ("Where a claimant's testimony is medically supported, the ALJ can reject the claimant's testimony about the

severity of [his] symptoms only by offering *specific, clear and convincing reasons* for doing so. The clear and convincing standard is the most demanding required in Social Security cases. It is the same as that required to reject the uncontradicted opinion of a treating physician." (emphasis added; internal quotations and citations omitted)).

In any event, the Court's observations are of no moment because the parties each believe they prevail under either approach. Applying the Ninth Circuit's analytical framework, the Court will assess whether the ALJ's reasons for discounting the opinions of Moore's treating physicians are specific and legitimate because those opinions are contradicted by state agency reviewers Drs. James Williams and Mikhail Bargan, as well as consultative examiner Dr. Brian Briggs. (AR 87, 121-24, 496-501.)

The ALJ offered several reasons for assigning little weight to Dr. Vosler's opinion, none of which are adequate. First, the ALJ stated that he assigned less weight to Dr. Vosler's opinion because he was detailing "limitations outside of his area of expertise." (*Id.* at 31.) A treating doctor's opinion, however, is accorded deference because of the physician's relationship with the patient, aside from any special qualifications. *See Benton ex rel. Benton v. Barnhart,* 331 F.3d 1030, 1036 n.1 (9th Cir. 2003). Moreover, the ALJ failed to explain how or why Dr. Vosler, who is Moore's treating pain management doctor, is unqualified to opine on the limiting effects of Moore's conditions and the resulting pain.

The ALJ also discounted Dr. Vosler's opinion because he believed that "[s]uch a complete limitation in postural activities would render the claimant incapacitated; however, the claimant stooped, balanced, and sat for longer than 15 minutes during the course of the hearing without noticeable difficulty." (AR 31.) Though inconsistency with a claimant's regular activities could be a legitimate reason for discounting a physician's opinion, the fact that Moore sat for longer than 15 minutes during a single hearing is not substantial evidence supporting the ALJ's conclusion.

Finally, the ALJ reasoned that Dr. Vosler's opinions must be based on Moore's subjective complaints (which the ALJ did not find credible) rather than objective medical

findings because the opinions are inconsistent with the medical record. If properly supported, these reasons could be specific and legitimate. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Tommasetti*, 533 F.3d at 1041. But the ALJ based his conclusion on a mere two pages of medical records: an August 29, 2014 record that noted Moore experienced 85 percent pain relief after cervical facet procedures and 60 percent pain relief from a spinal cord stimulator, and a September 19, 2014 treatment record noting that a physical exam of Moore showed normal musculature, range, of motion, gait, balance, and coordination. (AR 31, 1104, 1159.) Moreover, the records relied upon by the ALJ do not necessarily undermine Dr. Vosler's opinions to the extent they are based upon the effects of Moore's fibromyalgia as opposed to her back problems. *See Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988) (noting that fibromyalgia patients often manifest normal muscle strength, neurological reactions, and have a full range of motion). "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017).

The ALJ assigned little weight to Dr. Bhalla's opinion for two reasons. First, the ALJ found that Dr. Bhalla's opinion was inconsistent with his own examination findings. The ALJ based this conclusion on the same September 19, 2014 treatment record noting that a physical exam of Moore showed normal musculature, range, of motion, gait, balance, and coordination. This single record is not itself sufficient to support the ALJ's conclusion, nor does the ALJ's rationale adequately account for the unique symptoms and diagnostic methods of fibromyalgia. Second, the ALJ stated that Dr. Bhalla's findings were inconsistent with Moore's activities of daily living. But the ALJ failed to provide any information about the exertional requirements, frequency, or duration of Moore's daily activities that were at odds with her assessed limitations. Accordingly, the ALJ's stated rationale is not sufficiently specific or supported. For these reasons, the Court finds that the ALJ erred in discounting the opinions of Moore's treatment

providers.

### C. Remedy

Having concluded that the ALJ erred in discounting the opinions of Moore's treating physicians, the Court must determine the appropriate remedy. The credit-as-true rule allows the Court to make a finding of disability when an ALJ fails to provide legally sufficient reasons for rejecting challenged evidence, there are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the evidence in question credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The Ninth Circuit recently cautioned, however, that "[a]n automatic award of benefits in a disability case is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Barryhill*, 874 F.3d 1130, 1132 (9th Cir. 2017). The Court need not apply the credit-as-true rule where the record is "uncertain and ambiguous." *Id.* at 1133.

The Court finds that a remand for further proceedings is appropriate because the record as a whole is uncertain and ambiguous. As previously noted, the ALJ reasonably discounted Moore's symptom testimony due to inconsistencies in the record. Further, it is not clear that the ALJ appropriately considered the unique symptoms and diagnostic techniques for fibromyalgia when assessing whether the opinions of Moore's treatment providers are consistent with the objective medical evidence. Nor is it clear how predominantly Moore's fibromyalgia diagnosis influenced the treating physicians' opinions, as opposed to other impairments. Notably, Moore testified that her most serious health problems are caused by her back pain. Accordingly,

//
//
//
//
//
//

**IT IS ORDERD** that the final agency decision is **REVERSED** and this matter **REMANDED** for further proceedings.

Dated this 14th day of December, 2017.

_____
Douglas L. Rayes
United States District Judge